NATHANIEL M. SAFFORD *vs.* OLD COLONY RAILROAD COMPANY.

Norfolk.     March 19, 1897. — May 22, 1897.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & BARKER, JJ.

*Report of Master — Right of Way by Substitution — Motion to Recommit — Exceptions — Prescription — Practice.*

If a master's report shows that the evidence was reported to the court at the plaintiff's request, in accordance with the rule which authorized the master " to find the facts and report the evidence so far as requested by either party," a motion by the plaintiff to recommit the report, with instructions to the master to report only the evidence upon which he based his findings, and such other evidence taken before him as either party might request, is properly overruled.

Where, on a bill in equity to compel a railroad company to open and perpetually maintain a private way at grade across its tracks, it appears that the plaintiff

has no title to the way by deed or grant and has not used it long enough to ac-
quire a right in it by prescription, the way in another place which he had by
prescription having been taken by the defendant and paid for in accordance
with the verdict of a jury in an action at law, a decree overruling the excep-
tions of the plaintiff to the master's report, confirming the report, and dismissing
the bill, will not be disturbed ; and the finding of the master, that in fact and in
law no right to the way claimed in the suit of equity was in issue in the former
action or submitted to the jury for consideration, is correct, if no such issue was
raised by the pleadings, the suggestion of the plaintiff's counsel that the jury
might find that a substituted right of way had been acquired having been ob-
jected to by the defendant's counsel and not adopted by the court, and the
report of the proceedings at the former trial shows plainly that the plaintiff
gained, and the defendant lost, no rights by anything that occurred there in
regard to the alleged way in question in the suit in equity.

BILL IN EQUITY, to compel the defendant railroad company
to open and perpetually maintain a private way at grade across
its track in Milton. The bill alleged that the way was appur-
tenant to certain premises of the plaintiff described in the bill.
The answer denied that the plaintiff owned the way claimed in
the bill, and that the defendant had obstructed any right of way
belonging to the plaintiff ; and also alleged that any right of way
appurtenant to the plaintiff's land described in the bill was taken
by a location upon and taking for railroad purposes of the land
over which the right of way existed, and that specific damages
were paid for the interruption of the way caused by such taking.

The case having been referred to a master, " to find the facts
and report the evidence so far as requested by either party," he
found and reported as follows :

" 1. On and before July 9, 1887, the plaintiff's father, Nathaniel
F. Safford, possessed a piece of real estate in Milton, containing
over fifteen thousand square feet, some ninety odd feet of the
westerly side of which abutted on Adams Street, and about
thirty feet of the same side abutted on land occupied by the
defendant for the old railroad station, which station made a jog
in said land ; and the northerly side of said land abutted on the
defendant's railroad tracks and location. The front part of this
lot of land was occupied by a dwelling-house, known as the Suf-
folk Resolves House, which house was on the line of Adams
Street, and next southerly to the defendant's old railroad sta-
tion ; the rear part of said land, which was considerably lower
in grade than the front part, was occupied by stables let to other
tenants than those occupying the house.

" 2. The plaintiff's father had a right of way by prescription, for teams and foot passengers, in a different locus than that now in dispute, appurtenant to said estate. This way was nearly twenty feet wide, and ran from the northerly side of the land, near the stables, in a northerly direction, and crossed the defendant's railroad tracks nearly eighty feet easterly of Adams Street, and a little over twenty feet easterly of the old railroad station, which station made a jog in the land, as before stated.

" 3. In 1887 the defendant enlarged and extended its terminal facilities, and constructed a new railroad station. For this purpose, on July 9, 1887, it took by due proceedings at law a portion of the land belonging to the plaintiff's father, containing fifteen hundred and forty square feet, adjoining and directly easterly of the old railroad station. On this land thus taken they constructed a new railroad station, which wholly occupied that part of said land which had been the starting point of the prescriptive way, and wholly blocked up that portion of the defendant's land over which the way had passed.

" 4. The defendant in 1887, and after July 9 of that year, laid a stone or concrete platform in front of the new station, and parallel with its tracks, which platform extended over and across the locus of the prescriptive way, and continued beyond that point some eighty feet easterly. At the easterly termination of the concrete platform a space of about twelve feet was left, and beyond that space easterly was another wooden platform. Planking was laid down by the defendant between and each side of its tracks opposite and northerly of the space between the concrete and wooden platforms, and, after the prescriptive way had been interrupted, the plaintiff's father and his tenants, and afterwards the plaintiff and his tenants, made the same use, without objection by the defendant until June 24, 1892, of the land and planking opposite said space, and of the land between the two platforms that previously had been made of the prescriptive way. This new use of what may be called for identification a substituted way commenced immediately after the prescriptive way had been interrupted by the construction of the new station, which was in the autumn of 1887; and this substituted way is the right of way alleged in the present suit. The defendant on June 24, 1892, obstructed and stopped the substituted way by a

fence along the northerly line of its location.    The rear portion of the plaintiff's premises, upon which the stables stand, is of so much lower grade than Adams Street, that the most convenient and economical means of access to such portion is by a way across the defendant's railroad, and the stables were moved and relocated by the plaintiff's father so as to be reached by the substituted way at the time its use commenced.

" 5.   The plaintiff's father, being aggrieved at the damages awarded him by the county commissioners for the taking of said land, duly filed a petition, which was entered in July, 1890, in the Superior Court, asking that his damages might be assessed by a jury.   Pending that petition, and before a hearing thereon, the plaintiff's father, in April, 1891, died intestate, leaving a widow, Josephine E. M. Safford, who was appointed administratrix of his goods and estate, and was admitted to prosecute the petition.   The plaintiff was sole heir at law, and said land with its appurtenances descended to him in fee, subject to the widow's legal rights.

" 6.   The said petition for damages was tried in May, 1892, and the jury rendered a verdict for the petitioner for the sum of $746.61, upon which verdict judgment was entered on June 17, 1892, and said judgment was satisfied on June 20, 1892.   The presiding justice at the trial of said petition submitted to the jury the three following questions.

" First.   ' Was there a right of way appurtenant to the petitioner's land across the land of the respondent at the time of the taking of a portion of the petitioner's land by the respondent?'

" Secondly.   ' If so, state the amount of damages sustained by the petitioner by reason of the interruption to said way or inconvenience caused in its use by the taking by the respondent.'

" Thirdly.   ' State also where said right of way was, if one existed.'

" The jury answered the first question, ' Yes ' ;   the second question, ' One hundred fifteen dollars and fifty one-hundredths (this is included in the verdict) ' ;   and the third question, ' As per plan of Whitman and Breck, dated March 22, 1871.'

" The way laid down on the said plan of Whitman and Breck, which plan was in evidence, is the way described in paragraph two of this report, and called herein a prescriptive way.   During

the trial of said petition, the jury viewed the premises, saw the location of the old prescriptive way, and the location of the substituted way, and had their attention called by the petitioner's counsel to the fact that the use of the substituted way had taken the place of the prescriptive way. The admissibility in this case of the record and proceedings in said petition for damages was objected to by the defendant, and was admitted subject to its objection.

" 7. The plaintiff claimed upon all the evidence the right of way alleged in this suit, being that described in paragraph 4 of this report and called a substituted way, and that it had been substituted for and grafted upon the former prescriptive way, and that the plaintiff's right to this new or substituted way had been in issue, and had been established and determined in the aforesaid petition for damages, and that the jury in that case assessed damages only for the difference in value of the use of the prescriptive way and the substituted way. I find that the plaintiff had no right to the substituted way, and that the use thereof, as hereinbefore stated, was by the implied revocable license of the defendant.

" 8. Upon inspection and perusal of the record and evidence in the said petition for damages, I find :

"First. That the plaintiff was not a party to that suit, and his alleged rights in the substituted way could not have been in issue therein.

" Secondly. That said petition was for the assessment of damages sustained by the estate of Nathaniel F. Safford, on the ninth day of July, 1887, which date was anterior to any use of the substituted way.

" Thirdly. That in fact and in law no right to the alleged substituted way was in issue in said petition, or submitted to the jury for consideration.

" 9. I find and report that the plaintiff is not entitled to the right of way alleged in his bill.

" 10. At the plaintiff's request, I report and return to court herewith all the evidence taken before me, including three plans."

The plaintiff took sundry exceptions to the finding of the master on the evidence, and moved to recommit the report, with instructions to report only the evidence upon which he based his findings, and such other evidence, taken before him,

as either party might request.  The court overruled the motion, and the plaintiff appealed.  The court entered a decree that " the plaintiff's exceptions to the master's report be overruled, the master's report confirmed, and the bill dismissed with costs "; and the plaintiff appealed.

*H. E. Ware,* (*Z. S. Arnold* with him,) for the plaintiff.

*J. H. Benton, Jr.,* for the defendant.

KNOWLTON, J.   The plaintiff introduced at the hearing before the master the record of a judgment, and of the proceedings at the trial in a court of law in favor of the administrator of the estate of his father, from whom his title came by inheritance, against the defendant, to show that the matter now in issue was *res judicata,* or that the defendant was estopped from setting up a defence in the present suit.   He then took sundry exceptions to the finding of the master on this evidence.   The master annexed to his report a copy of this evidence, and of all the other evidence in the case, and the plaintiff moved to recommit the report, with instructions to report only the evidence upon which he based his findings, and such other evidence taken before him as either party might request.   The court overruled the motion, and the plaintiff appealed.   The order overruling the motion was correct.   The report shows that the evidence was reported to the court at the plaintiff's request, in accordance with the rule under which the master was acting.   If the parties agreed to submit the case to the court upon a part of the evidence taken before the master, they could do so without an order of recommittal, and in the absence of such an agreement neither party could properly be compelled under this rule to submit to a hearing upon only a part of the evidence.

The plaintiff also appealed from the decree overruling his exceptions, confirming the report, and dismissing the bill.   This decree was plainly right.   The plaintiff has no title to a way by deed or grant.   He has not used the way in question long enough to acquire a right in it by prescription.   The way in another place which he had by prescription was taken by the defendant, and paid for in accordance with the verdict of the jury in the action at law above referred to.

The findings of the master that in fact and in law no right to the way now claimed was in issue in the former action, or submitted

to the jury for consideration, was correct. No such issue was raised by the pleadings, and the suggestion of the plaintiff's counsel that the jury might find that a substituted right of way had been acquired, was expressly objected to by the defendant's counsel, and not adopted by the court.* The stenographic report of the proceedings at the former trial shows plainly that the plaintiff gained, and the defendant lost, no right by anything that occurred there in regard to the alleged way now in question.

*Decree affirmed.*

---

* When the counsel for the railroad company requested, in the trial of the petition for damages, that, if the jury found there was a prescriptive way, they should find where it was, it was conceded that it was as laid down on Breck's plan, and the counsel for the railroad then said, "If it was there, it was not anywhere else," to which counsel for the administratrix said, "Then it went by substitution, by the acquiescence of the railroad, in the other place." To which the reply was made, "Not at all. You cannot get it in two places. If you had it, we are willing to pay any damage to it, but we want that to be the end of it." The petitioner's counsel then asked the court, if the jury found there was a right of way, that they should also find that the petitioner had a substituted right of way. This the judge declined to have done, saying that he did not understand there was any substituted right of way, and that the question of such substituted way was not in issue.